**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **BRIAN BALZER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 07-1132-KMH |
| ) | |
| **SOUTH KANSAS AND OKLAHOMA** ) | |
| **RAILROAD, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter is before the court on defendant's motion for partial summary judgment (Doc. 50). For the reasons set forth below, defendant's motion shall be DENIED because there are material facts in dispute which preclude summary judgment.

## Background

This is an action to recover damages for injuries alleged to have occurred while plaintiff was working for the South Kansas and Oklahoma Railroad, Inc. (SKO). Highly summarized, plaintiff asserts that he injured his back when he attempted to "couple" a locomotive to a rail car. Specifically, he alleges that he fell backward and injured himself while pulling on a prybar in an effort to move a "frozen" drawbar on a locomotive. He seeks recovery under the Federal Employers Liability Act, arguing that defendant "negligently

failed to provide reasonably safe conditions, equipment and training in safe work methods." Alternatively, plaintiff claims that the locomotive had "a defective drawbar mechanism constituting a violation of the Locomotive Inspection Act (LIA)." SKO moves for summary judgment on plaintiff's LIA theory, arguing that "the uncontroverted facts demonstrate that the drawbar and locomotive were not defective."

## **Summary Judgment Standards**

The standards for summary judgment are well established. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of **material** fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis added). The substantive law identifies which facts are material. Id. at 248. A dispute over a material fact is "genuine" when the evidence is such that a reasonable jury could find for the non-movant. Id. "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

The movant has the initial burden of showing the absence of a genuine issue of material fact and that movant is entitled to judgment as a matter of law. Shapolia v. Los

Alamos Nat'l. Lab, 992 F.2d 1033, 1036 (10th Cir. 1993). This burden may be discharged by showing there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1985). Once the movant makes a properly supported motion, the non-movant must do more than merely show there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1985). The non-movant must go beyond the pleadings and, by affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324 (interpreting Fed. R. Civ. P. 56(e)).

The court must view the facts in the light most favorable to the non-movant and allow the non-movant the benefit of all reasonable inferences to be drawn from the evidence. See, e.g., United States v. O'Block Oak, 788 F.2d 1433, 1435 (10th Cir. 1986). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the non-movant for a finder of fact to return a verdict in that party's favor. Anderson, 477 U.S. at 249. Essentially, the court performs a threshold inquiry determining whether a trial is necessary. Id. at 250.

### SKO's Motion for Partial Summary Judgment

As noted above, SKO argues that it is entitled to summary judgment on plaintiff's LIA theory because the uncontroverted facts establish that neither the drawbar nor the locomotive were defective. The court does not agree. Although many of the facts leading up to and after plaintiff's injury are undisputed, the court is satisfied that material factual issues exist

concerning the drawbar and whether it was in a defective condition and caused plaintiff's injury. The following facts are taken verbatim from SKO and plaintiff's respective briefs and provide context for the court's ruling.[1]

## SKO's Uncontroverted Facts

1. Plaintiff Brian Balzer worked as a conductor for defendant SKO out of Winfield, Kansas on and around August 5, 2004.

2. On August 5, 2004, plaintiff was working as a conductor on the haulage run, while his brother Robert Balzer served as the engineer on that run.

3. Prior to making the run, at the start of his shift, Robert Balzer conducted the required inspection of the locomotive to determine if there were any defects.

4. If Robert Balzer identified any defects in the locomotive he would have been required to fill out a report and red tag the locomotive.

5. Robert Balzer did not identify any defects on the locomotive in question at the start of the shift.

6. Upon returning from the haulage run on August 5, 2004, plaintiff and Robert Balzer proceeded to set out cars off the train in the Winfield yard.

7. In the course of setting out cars, plaintiff had occasion to attempt to line up the knuckles of the locomotive and a rail car to couple the two.

8. The train was sitting on a curved portion of track, making the

---

[1] The majority of the following facts are admitted by opposing counsel. In a few instances, the opposing party does not dispute the stated fact but argues that the "fact" is not determinative as to whether summary judgment should be granted or denied.

coupling difficult.

9. To couple the car and locomotive, plaintiff moved the coupler on the car as far to the side as he could.

10. Plaintiff then sought to reposition the drawbar on the locomotive.

11. In the course of attempting to move the drawbar further to the side, plaintiff injured his back and became unable to complete the task of coupling the car and locomotive.

12. Plaintiff claims that the drawbar did not move when he attempted to reposition it, requiring him to attempt to use a pry bar as leverage to move the drawbar.

13. Plaintiff further claims that as he was utilizing the pry bar to attempt to move the drawbar, the pry bar slipped, causing plaintiff to fall backwards onto the ground.

14. In seeking treatment for his back injury, plaintiff told Dr. Aaron Watters' office that he picked up the coupler on the train and felt a sharp pain.

15. In seeking treatment from Dr. Jerome Mangen, plaintiff told Dr. Mangen's office that he was making a joint between two cars on August 5, 2005, and in doing so had to pick up a hitch and move it. While he was moving it, he felt a pain in his right side, low mid back.

16. After plaintiff claimed to have injured his back, Robert Balzer completed the coupling of the car and locomotive.

17. In coupling the locomotive, Robert Balzer did not make any attempt to move the drawbar.

18. Plaintiff alleges that his injury was caused by a defect in the drawbar of the locomotive.

**Plaintiff's Additional Uncontroverted Facts**

11. Linn Herman was the plaintiff's supervisor and a trainmaster for SKO. He controlled the Winfield area as a trainmaster.

12. Trainmen such as Brian Balzer must adjust or align drawbars from time to time. Drawbars are extremely heavy and it is important to use correct body mechanics to move them. There are alignment devices manufactured and used by railroads to assist employees in aligning drawbars. All WATCO Companies, which includes SKO, were instructed by Vaughn in December 2003 that there was only one approved alignment device.[2] There is no evidence that this approved device was available to plaintiff on August 5, 2004.

13. Plaintiff was attempting to align the drawbar of a locomotive at the time he was injured.

\* \* \*

15. A drawbar can normally be moved by cradling it, lifting it and then sliding it over to one side.

\* \* \*

17. Defendant does not train its engineers to physically attempt to move drawbars during their daily inspection of locomotives. Robert Balzer did not check whether the locomotive's drawbar could be moved during the course of his daily inspection because he was not trained to do so and because he did not want to hurt his back.

18. A drawbar on a locomotive that is incapable of being adjusted or moved is a defective condition that requires the locomotive to be taken out of service.

19. The inability to align or move a drawbar by hand could be due to the lack of proper and timely maintenance, wear and tear of the drawbar mechanism, cold weather, or the positioning of the care in a sharp

---

[2] Gary Vaughn is a vice-president of safety for WATCO Companies and his responsibilities include training SKO's employees and publishing rule books.

>  curve or turn-out of 12 degrees or more. Cold weather was not a
> factor that affected the plaintiff's ability to move the drawbar on the
> locomotive on the date of his injury, August 5, 2004.[3]

## Analysis

As reflected in the above uncontested facts, the parties agree that " a drawbar on a locomotive that is incapable of being adjusted or moved is a defective condition that requires the locomotive to be taken out of service." SKO argues that there is no evidence that the drawbar was incapable of being moved or was otherwise defective. The court does not agree. Plaintiff testified during his deposition that the locomotive's drawbar would not move and he was injured while using a pry bar in an attempt to move the drawbar. Therefore, evidence exists that the drawbar was in a defective condition at the time plaintiff was injured.

SKO counters with a number of reasons why the drawbar was not defective, none of which are conclusive for summary judgment purposes. For example, SKO argues that Robert Balzer inspected the locomotive before beginning work on the day in question and

---

[3]

Plaintiff also contends that "there is no evidence in the record that the locomotive and railcar were positioned on a sharp curve or turn-out of 12 degrees or more at the time that plaintiff was attempting to move the drawbar." SKO disputes this statement and argues that plaintiff testified during his deposition that the positioning of the locomotive and railcar on a curve prevented the two from coupling.

The court has reviewed the deposition testimony cited by SKO and, although plaintiff testified the rail car was on a curve, there is no testimony as to whether the curve was "sharp" or a "turn-out of 12 degrees or more." Accordingly, the *nature* of the curve is an unresolved factual dispute for purposes of this motion.

did not observe any defect concerning the drawbar.  The fact that Robert did not *see* any defect during his visual inspection is some evidence as to whether the drawbar would or would not move.  However, it is not conclusive.  Robert testified that he did not attempt to move the drawbar when conducting his inspection; therefore, he did not know whether it would move.

Similarly, SKO argues that, after plaintiff's alleged injury, Robert was able to couple the locomotive to the rail car and move the car.  However, Robert accomplished this task by first attaching a chain between the locomotive and rail car and moved the car so that the drawbar and coupler would line up.  Although Robert's testimony explains how the car was ultimately moved, it does not indicate whether the drawbar was capable of being moved.

SKO asserts that the fact that Robert did not "take the locomotive out of service" immediately after plaintiff's injury shows that the locomotive and its drawbar were not defective.  However, Robert explains that he moved the train because the rail car was blocking a crossing and he wanted to avoid a fine for a railroad crossing violation.  Robert also explained that he did not "red-tag" the locomotive after moving the cars because his supervisor (Herman) had been made aware of the incident.  Under the circumstances, the fact that Robert did not take the locomotive out of service is not conclusive evidence that the drawbar would not move.

Finally, SKO argues that the medical records of Dr. Watters and Dr. Mangen indicate that plaintiff told the doctors' staff that he was injured when he *picked up* the

-8-

coupler or hitch. Evidence that plaintiff gave prior inconsistent statements to his medical providers goes to his credibility and the weight the jury may give his testimony. The court does not resolve credibility issues or weigh the evidence in ruling on a motion for summary judgment. Under the circumstances, the court is satisfied that material factual disputes exist concerning the drawbar which preclude summary judgment on plaintiff's LIA theory.

**IT IS THEREFORE ORDERED** that SKO's motion for partial summary judgment **(Doc. 50)** is **DENIED.**

Dated at Wichita, Kansas this 15th day of January 2009.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge